**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

F.A.C.E. TRADING, INC., d/b/a FACE
CARD PROMOTIONS; ADAM'S
ENTERPRISES, INC.,

        **Plaintiffs,**

v.                             **Case No.  8:05-cv-1740-T-23TBM**

FRANK FAMIANO; EAST-WEST
PARTNERS, INC.; UNIVERSAL
MANUFACTURING CO.,

        **Defendants.**
_____/

## REPORT AND RECOMMENDATION

      THIS MATTER is before the court on referral by the Honorable Steven D.

Merryday for a Report and Recommendation on **Defendant Universal Manufacturing**

**Company's Motion to Dismiss and Memorandum in Support** (Doc. 7).  By its motion,

Defendant Universal Manufacturing Company (hereinafter "Universal") seeks an order

dismissing Plaintiffs' claims against it for lack of personal jurisdiction and improper venue.

Plaintiffs filed a  response in opposition (Doc. 8), and Defendant filed a reply (Doc. 17).

      Also before the court is **Plaintiffs' Motion for a Preliminary Injunction** (Doc. 9),

supported by a memorandum (Doc. 10) and the Declaration of Michael Millsap and attached

exhibits (Doc. 11).  Defendants filed a response in opposition and supporting exhibits (Doc.

24).

      A hearing on the motions was conducted on December 15, 2005.

I.

Plaintiff Adam's Enterprise, Inc. (hereinafter "Adams"), is a Nevada corporation and

owner of United States Patent No. 6,340,179 (hereinafter "'179 Patent"), a patent for

advertising materials and method for cooperative promotions.   The patent abstract describes

the product as follows:

> Advertising materials are provided for cooperative
> promotions.  The materials consist of a set of coupons and a
> promotional piece or flare.  Each coupon includes a back fact
> with award structure information printed thereon and a front
> face with product advertising printed thereon.  Each coupon
> entitles its purchaser to a substantial discount on a product,
> which discount exceeds the purchase price of the coupon.
> Multiple break-open windows are formed in the coupon and
> are movable between closed and open positions respectively
> concealing and revealing outcome-determining indicia.  The
> indicia comprise symbol combinations and identify
> respective coupons as either losers or winners entitled to pre-
> determined awards.  A cooperative promotional method
> utilizing the advertising materials is also disclosed.

Comp., Ex. A (Doc. 1-2 at 1).  Adams has licensed certain rights in the '179 Patent and in its

AD-TABS trademark, United States Registration No. 2,618,600, to Plaintiff F.A.C.E.

Trading, Inc., doing business as Face Card Promotions (hereinafter "FACE"), a Wisconsin

corporation.

Plaintiffs market and sell promotional coupon cards utilizing the advertising

materials and cooperative promotional method protected by the '179 Patent.  Plaintiffs'

promotional coupon cards are provided to venders as a set of coupon cards and promotional

and advertising material.  The vendors, in turn, provide these coupon cards and promotional

and advertising material to retailers who market the promotional coupon cards to the end

2

customer.  Plaintiffs' promotional coupon cards and associated advertising material are sold under the AD-TABS trademark.  Plaintiffs' coupon cards are printed with a variety of themes each promoting different products.  Pertinent to this action are its  "Race to Win" card and a "beetle bailey" card.  All its cards bear the AD-TABS trademark and '179 Patent number. They are sold in machines and dispensers bearing the AD-TABS trademark; posters promoting the AD-TABS cards and bearing the trademark are used at the point-of-purchase where the cards are sold; and a "no purchase necessary" form, which may be completed and mailed to FACE to obtain a free coupon card, are also typically provided at the point of purchase.

Defendant Universal Manufacturing Co. (hereinafter "Universal") is a Delaware[1] corporation with its principal place of business in Kansas City, Missouri.  Defendant Frank Famiano is a resident of Florida and the principal of Defendant East-West Partners, Inc. (hereinafter "EWP").  EWP is a Florida corporation that sells coupon cards and advertising materials.  Famiano's residence at 710 Brantenburg Way, Lutz, Florida 33548, is also EWP's principal place of business.  Since at least 2001, Universal has manufactured coupon cards for Plaintiffs that are marketed under the AD-TABS trademark.  Beginning in about November 2001and up until recently, Famiano and EWP acted as distributors of Plaintiffs' coupon cards.

By Plaintiffs' allegations, Universal manufactured promotional coupon cards using products and methods that infringe on the '179 Patent and the AD-TABS trademark and trade

---

[1]The Complaint alleges that Universal is a Missouri corporation.  However, Scott Breeding, the President of Universal, states that Universal is a Delaware corporation.  (Doc. 7-2 at ¶ 2).

3

dress; Universal sold infringing products and induced infringement of the '179 Patent by

Famiano and EWP; and Famiano and EWP have sold these infringing products to vendors for

distribution to retailers and sale to end customers.  Plaintiffs allege that the coupon cards and

promotional materials manufactured and sold by Defendants are confusingly similar to, are

passed off as, and unfairly compete with the AD-TABS coupon cards sold by Plaintiffs.

Plaintiffs filed the instant Complaint alleging patent infringement in violation of 35

U.S.C. § 271 (Count I) and unfair competition, trademark infringement, and trade dress

infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II).

<u>See</u> (Doc. 1).[2]  Plaintiffs seek, *inter alia*, an award of compensatory damages, treble damages,

disgorgement of profits, prejudgment interest, costs and fees, and the entry of a preliminary

and permanent injunction prohibiting Defendants from infringing on the '179 Patent and the

AD-TABS trademark and trade dress.

Famiano and EWP filed Answers (Docs. 5, 6) to the Complaint, denying any patent

or trademark infringement.  In lieu of an Answer, Universal filed the instant motion to dismiss

(Doc. 7-1) for lack of personal jurisdiction and improper venue under Rule 12(b)(2) and (3) of

the Federal Rules of Civil Procedure.  The motion is supported by the Affidavit of Scott

Breeding (Doc. 7-2).  Plaintiffs filed a response (Doc. 8-1) and the Declaration of Michael

Millsap and attached exhibits (Doc. 8-2).  With leave of court, Defendant filed a reply (Doc.

17).

---

[2]The exhibits (Docs. 1-1 through 1-5) to the Complaint were filed before the pleading
itself (Doc. 1-6).

Plaintiffs also filed a motion (Doc. 9) seeking the entry of a preliminary injunction enjoining Defendants from (1) infringing on Plaintiffs' United States Patent No. 6,340,179; (2) infringing on Plaintiffs' AD-TABS trademarks; and (3) unfairly competing with Plaintiffs by passing off unauthorized promotional coupon cards as Plaintiffs' AD-TABS trademarked coupon cards.  Plaintiffs filed a memorandum (Doc. 10) and the Declaration of Michael Millsap and attached exhibits (Doc. 11).  Defendants filed a response and attached exhibits (Doc. 24) in opposition.

## II.

### A.

A federal court sitting in diversity may exercise jurisdiction over a defendant "only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment."  Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999) (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)).[3]  A plaintiff seeking to assert jurisdiction over a nonresident defendant "initially need only allege sufficient facts to make out a prima facie case of jurisdiction."  Posner, 178 F.3d at 1214.

---

[3]The Federal Circuit holds exclusive jurisdiction over an appeal from a final decision of a federal district court that is based in whole or in part on federal patent law.  Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 829 (2002).  Thus, while the law of the Federal Circuit controls on questions of procedural and substantive patent law, on issues not relating to patent law, the district courts and the Federal Circuit defer to the decisions of the regional circuit in which the district court sits.  Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1379 (Fed. Cir. 2005); Ventrassist Party Ltd. v. Heartware, Inc., 377 F. Supp. 2d 1278, 1282-83 (S.D. Fla. 2005) (citing Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 856 F.2d 173, 175 (Fed. Cir. 1988)).

However, where the defendant has supported its jurisdictional challenge with affidavits, the

plaintiff "bears the burden of proving 'by affidavit the basis upon which jurisdiction may be

obtained.'" Id. (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)).

The court must accept the facts alleged in the complaint as true to the extent that they are not

controverted by the defendant's affidavits.  Where the parties' affidavits conflict, the court

must construe all reasonable inferences in favor of the plaintiff.  Cable/Home Communication

Corp. v. Network Prods. Inc., 902 F.2d 829, 855 (11th Cir. 1990).  Where the parties'

affidavits do not clarify the dispute, an evidentiary hearing is appropriate.  See Venetian

Salami, 554 So. 2d at 502.

B.

In deciding the reach of Florida's long-arm statute, the court is bound to adhere to

the decisions of the Florida courts.  Sculptchair, 94 F.2d at 627.  In this regard, Florida's long-

arm statute must be strictly construed, and the plaintiffs bear the burden of proving facts

which satisfy the criteria.  See id.; Polymers, Inc. v. Ultra Flo Filtration Sys., Inc., 33 F. Supp.

2d 1008, 1013 (M.D. Fla. 1998).  Florida Statutes section 48.193(1) provides for specific

jurisdiction under the following circumstances:

> (1)  Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a)  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

6

(b)      Committing a tortious act within this state.

Fla. Stat. ch. 48.193(1)(a), (b).  Section 48.193(2) provides for general jurisdiction over a

defendant " who is engaged in substantial and not isolated activity within this state, whether

such activity is wholly interstate, intrastate, or otherwise. . . ." Id. at ch. 48.193(2).

By its pleadings as supported by the Affidavit of Scott Breeding, Universal argues

that neither of these subsections applies to it, and therefore it has not submitted to either the

specific or general jurisdiction of the courts in the state of Florida.  According to Universal, it

is a Delaware corporation with its principal and only place of business in Kansas City,

Missouri, where it manufactures its products and from which it ships its products through

third party carriers.  It is not registered to do business in Florida; owns no assets in Florida;

does not own or lease property in Florida; does not have a registered agent in Florida; does

not have a regular place of business in Florida; does not insure any person, property, or risk in

Florida; and has not entered into any contract with a resident of Florida to be performed, in

whole or in part, by Universal in the state of Florida.  Universal acknowledges that some of its

products are sold to Florida; however, it urges that it derived less than one percent of its total

revenue from its sales to Florida customers for 2004, 2005, and as projected for 2006.[4]  Under

these circumstances, Universal argues that its business activity is insignificant and

unsubstantial, and it does not have continuous and systematic business contacts with Florida.

---

[4]Specifically, Universal states that for the twelve-month period ending September 30, 2004, total sales of products in Florida represented .08% of its sales; for the twelve-month period ending September 30, 2005, total sales of products in Florida represented .77% of its sales; and for twelve-month period ending September 30, 2006, its projected sales of products in Florida will not exceed .10% of its sales.  See Aff. of Scott Breeding (Doc. 7-2 at ¶¶ 8-10).

Universal points out that the Plaintiffs are also nonresident parties.  Moreover, because all of Universal's business activities related to the manufacture and distribution of its products occur in Missouri, it has not committed a tortious act in Florida.  By Universal's argument, Plaintiffs have failed to satisfy the requirements of Florida's long-arm statute for either specific jurisdiction under section 48.193(1)(a) or (b) or general jurisdiction under section 48.193(2), and it lacks sufficient "minimum contacts" with the state of Florida to satisfy due process.

In response, Plaintiffs argue that this court has specific jurisdiction over the Universal because it is engaging in business in this state by manufacturing coupon cards for Defendants Famiano and EWP.  By Plaintiffs' argument, the percentage of Universal's business in Florida is inconsequential when the cause of action arises from the defendant's business activity in Florida.  Additionally, Plaintiffs argue that Universal has committed a tortious act in the state by committing acts of patent infringement by inducing and/or contributing to infringement by Famiano and EWP.

Initially, Plaintiffs' allegations of Universal's patent infringement in the state of Florida is sufficient to bring Universal's actions within the ambit of the Florida long-arm statute.  In particular, Plaintiffs allege:

> Defendant UNIVERSAL has engaged in active inducement and/or contributory infringement of the '179 Patent by inducing the infringement by FAMIANO and EWP and by selling and/or offering to sell a component of the patented product and/or a component for use in the patented method in violation of 35 U.S.C. § 271.

8

(Doc. 1 at ¶ 17).   In support of its motion to dismiss, Universal offers the affidavit of Mr. Breeding, which attests to the manufacturing, sale, and shipment of its products in Missouri and to the limited revenue brought in by its sales to Florida.   These statements arguably challenge the suggestion that Universal's business in Florida is substantial and not isolated activity for purposes of contesting general jurisdiction under section 48.193(2).   However, Universal does not dispute that it manufactured products that entered the stream of commerce in Florida.   To the extent that Plaintiffs alleges that such business activity constitutes patent infringement, they have sufficiently alleged that Defendants committing a tortious act within this state under section 48.193(1)(b).   Contrary to Universal's argument that any infringement would have thus occurred in Missouri, the Federal Circuit has indicated that the tortious act of patent infringement occurs where the buyer is located.   North Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("[T]he situs of the infringement is wherever an offending act is committed . . . We hold that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there).").   Moreover, while its sales to Florida may have constituted a small percentage of its total sales, its activities in this state are sufficient to "show a general course of business activity in the State for pecuniary benefit.   Sculptchair, 94 F.3d at 627 (quoting Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So. 2d 561, 564 (Fla. 1975)).

Under these circumstances, Plaintiffs have sufficiently met the pleading requirements under Florida's long-arm statute to bring Universal within this court's specific jurisdiction.

9

C.

The court must next determine whether exercising jurisdiction over Universal in these circumstances comports with due process.  Due process requires the nonresident defendant to have sufficient minimum contacts with the forum state such that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.  See Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945); S.E.C. v. Carrillo, 115 F.3d 1540 (11th Cir. 1997); Sculptchair, 94 F.3d at 626.   Minimum contacts must be "purposeful" contacts in order to "ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-74 (1985); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "There must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  In this circuit, a three-part test is applied in deciding whether the minimum contacts requirement is met:  (1) the contacts must be related to the plaintiff's cause of action; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.  Posner, 178 F.3d at 1220; Sculptchair, 94 F.3d at 631.  In determining whether the exercise of jurisdiction would offend notions of fair play and substantial justice, the court should consider the burden on the defendant of defending the suit in Florida; Florida's interest in adjudicating the suit; the plaintiff's interest

in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies. Id. at 1221.

Citing to Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102 (1987), Universal argues that merely placing its product in the stream of commerce, without more, does not satisfy the minimum contacts requirement. Additionally, relying on Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994), Universal argues that it does not have an "established distributional channel" to establish the requisite minimum contacts with the forum.

Contrary to Universal's arguments, the Plaintiffs do allege that Universal has done more than place its product into the stream of commerce with the mere possibility that "the stream of commerce may or will sweep the product into the forum State," Asahi, 480 U.S. at 112, or that its products would enter the forum state through indirect shipments in the stream of commerce. Beverly Hills Fan, 21 F.3d at 1564. Instead, Plaintiffs allege, and Universal does not dispute, that it has done business directly with EWP, a Florida company; established a distribution channel directly to Florida through EWP; and shipped its products directly into Florida for further distribution to the consuming public. Under these circumstances, Universal cannot claim that its contact with the forum state is incidental and that it could not reasonably anticipate being haled into court here.

While the conduct of this suit in Florida will necessarily involve some inconvenience to Universal as a nonresident litigant (and Plaintiffs as well), there surely will be less inconvenience in having the matter resolved in a single court. Given the nature of Plaintiffs' claim for damages by reason of the violations in Florida, they have the greater interest in

11

obtaining convenient and cost effective relief in this forum.  Because Plaintiffs' damages

allegedly derive, in part, from infringement and loss of sales to distributors and retailers in

Florida, Florida appears to have an interest in adjudicating the suit in this state that is at least

equal to the interest any other state where the suit might be brought.  Finally, the interest of

using interstate resources efficiently would appear to be fostered by suit in this district since

the court will proceed to adjudicate the matter against EWP and Famiano, who do not dispute

this court's jurisdiction.[5]

Thus, the exercise of jurisdiction over Universal comports with due process

requirements, and this court should deny Universal's motion to dismiss for lack of personal

jurisdiction.

### D.

Universal also seeks a dismissal of this action because of improper venue.  28 U.S.C.

§ 1400 governs venue in patent infringement actions.  This section provides:  "Any civil

action for patent infringement may be brought in the judicial district where the defendant

resides, or where the defendant has committed acts of infringement and has a regular and

established place of business."  Id.   For venue purposes, a defendant corporation is deemed to

reside in any judicial district in which it is subject to personal jurisdiction at the time the

action is commenced.  See 28 U.S.C. § 1391(c); VE Holding Corp. v. Johnson Gas Appliance

Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990).  Universal argues that because this court lacks

---

[5]Plaintiffs observe that the courts of Wisconsin (where FACE is located) and Nevada (where Adams is located) would not have personal jurisdiction over any of the Defendants, and the courts of Missouri (where Universal is located) would lack personal jurisdiction over Defendants Famiano and EWP.

personal jurisdiction over it, it does not reside in Florida, nor has it committed acts of infringement or has a regular and established place of business in this judicial district.

Because this court finds that it has personal jurisdiction over Universal, it likewise finds that venue is proper in this district.

Accordingly, I recommend that the court DENY Defendant Universal Manufacturing Company's Motion to Dismiss (Doc. 5) and DENY as moot Plaintiffs' request to take limited jurisdictional discovery.

### III.

### A.

Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. The purpose of a preliminary injunction is to maintain the *status quo* until the court can enter a final decision on the merits of the case. United States v. DBB, Inc., 180 F.3d 1277 (11th Cir. 1999); see also Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). A party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205 (11th Cir. 2003); Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242 (11th Cir. 2002); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted

unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." McDonald's, 147 F.3d at 1306 (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).  A plaintiff may support its motion a preliminary injunction by setting forth allegations of specific facts in affidavits.[6] See M.D. Fla. R. 4.05(b)(2), 4.06(b)(3).

Injunctive relief in a patent case is authorized by 35 U.S.C. § 283.  Both the Eleventh Circuit and the Federal Circuit have recognized the extraordinary nature of preliminary injunctive relief in patent infringement cases.  See e.g., Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001); MercExchange, LLC v. eBay, Inc., 401 F.3d 1323, 1339 (Fed. Cir. 2005); Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).  The Rule 65 standard applies with respect to patent infringement claims; however, the movant must establish, in light of the presumptions and burdens that will inhere at trial on the merits, a likelihood of success on the merits with respect to both the validity and infringement.  Nutrition 21 v. United States, 930 F.2d 867 (Fed. Cir. 1991).  In other words, the plaintiff must establish that (1) the defendants likely infringed the patent in question, and (2) the claims of the patent will likely withstand defendants' challenges to its validity.  Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1370 (Fed. Cir. 2005); Ranbaxy Pharm. Inc. v. Apotex, Inc., 350 F.3d 1235, 1239 (Fed. Cir. 2003).

---

[6]In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction.  Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

B.

As to their claims of patent infringement, Plaintiffs claim that the Defendants are producing "knock-off" coupon cards similar to their AD-TABS cards and using their patented promotional system.  In particular, Plaintiffs allege that since 2001, Universal has manufactured cards for Plaintiffs using the AD-TABS trademark and bearing the '179 Patent number, and until recently, Famiano and EWP have acted as distributors of the AD-TABS coupon cards.  Thus, by Plaintiffs' theory, Defendants are fully aware of Plaintiffs' patented cards and promotional system and have infringed on the '179 Patent by manufacturing and distributing confusingly similar cards and dispensing them using the AD-TABS trademark and promotional materials.  In support of this theory, Plaintiffs submit the Declaration of Michael Millsap (Doc. 11).  According to Mr. Millsap, on August 31, 2005, after receiving complaints from distributors of its cards, a representative of FACE contacted Joe Wilner, the Vice President of Sales for Universal about the "knock-off" cards.  See id. at ¶ 16.  In response, Mr. Wilner acknowledged that Universal was producing pull tab ticket games for EWP and that the production was "in an effort to regain a portion of the loss in sales that Universal has sustained from [FACE]."  Id. at Ex. 6 (Doc. 11-3 at 9).  Millsap attests that he has observed (and purchased) several of the "knock- off" cards being sold alongside AD-TABS cards in AD-TABS machines at locations in Bradenton, Ellenton, and Vero Beach, Florida.  Id. at 10-14.

15

Defendants argue that the '179 Patent is invalid.[7]  More particularly, Defendants argue that the invention in the '179 Patent was not new or novel because pull tab tickets had been in public use for many years prior to the granting of the '179 Patent.  Additionally, Defendants argue that even if new or novel, all of the claims of the '179 Patent would have been obvious to one of ordinary skill in the art at the time the invention was made.

A patent is presumed valid.  35 U.S.C. § 282.  This presumption of validity "is based on the acknowledged experience and expertise of the United States Patent Office and recognition that patent approval is a species of administrative determination supported by evidence."  Mfg. Research Corp. v. Graybar Elec. Co., 679 F.2d 1355, 1360-61 (11th Cir. 1982) (quoting Ludlow Corp. v. Textile Rubber & Chem. Co., 636 F.2d 1057, 1059 (5th Cir. 1981)).  The burden of establishing invalidity of a patent rests on the party asserting it.  35 U.S.C. § 282.  This burden generally is an onerous one.  Mfg. Research Corp., 679 F.2d at 1360.  The party must demonstrate the invalidity of a patent by clear and convincing evidence.  Invitrogen Corp. v. Biocrest Mfg., 424 F.3d 1374, 1378 (Fed. Cir. 2005) (citing Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1549 (Fed. Cir. 1983)).

> In resisting a preliminary injunction, however, one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself.

---

[7]Plaintiffs presume the validity of the patent and direct their arguments toward the alleged infringement, irreparable injury, weighing of the threatened injury with the damage that the proposed injunction may cause to it, and the public interest.  Defendants, on the other hand, challenge the validity of the patent and do not address the other Rule 65 factors with respect to the patent infringement claim.

Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1359 (Fed. Cir. 2001). A

validity analysis must be conducted on a claim-by-claim basis. Id. at 1351.

        35 U.S.C. § 101 provides that "[w]hoever invents . . . a new and useful process . . . or

any new and useful improvement thereof, may obtain a patent therefor, subject to the

conditions and requirements of this title." Id.  The conditions of patentability are set forth in

section 102, which provides in pertinent part:

> A person shall be entitled to a patent unless-
> (a) the invention was known or used by others in this country, . . .
> before the invention thereof by the applicant for patent, or
> (b) the invention was patented or described in a printed pub-
> lication in this or a foreign country or in public use or on sale in
> this country, more than one year prior to the date of the application
> for patent in the United States . . .

35 U.S.C. § 102.  Section 103 provides:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section 102
> of this title, if the differences between the subject matter
> sought to be patented and the prior art are such that the
> subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

35 U.S.C. § 103(a).  In considering the matter of obviousness, the court must examine (1) the

scope and content of the prior art; (2) the level of ordinary skill in the art; (3) differences

between the claimed invention and the prior art; and (4) the objective evidence of non-

obviousness. Graham v. John Deere Co., 383 U.S. 1 (1966); Iron Grip Barbell Co. v. USA

Sports, Inc., 392 F.3d 1317 (Fed. Cir. 2005); Syntex (U.S.A.) LLC v. Apotex, Inc., 407 F.3d

1371 (Fed. Cir. 2005).  If the challenging party raises a "substantial question" concerning the

17

validity of the patent, the burden then shifts to the patent holder to produce countervailing evidence that the defenses raised "lack substantial merit." Purdue Pharma L.P. v. Boehringer Ingelheim GmbM, 237 F.3d 1359, 1363 (Fed. Cir. 2001).

Defendants first argue that the '179 Patent is not novel and is invalid under section 102(b) because the invention described in the patent was in public use and on sale in this country more than one year prior to the date the application for the '179 Patent was filed in January 2002.[8]  According to Defendants, the break-open coupons that are the subject of the '179 Patent are nothing more than a form of pull tab cards that had been in existence for years prior to the dates on which the application for the '179 Patent and the abandoned patent application were filed.  In particular, Defendants point to "Phone Tab" cards manufactured by Universal in 1998 for the promotion of pre-paid phone services.  Defendants argue that there is no significant difference between the Plaintiffs' discounted price for a product or service promotion under the '179 Patent and the phone services and awards offered by the Phone Tab card.  By the affidavit of Joseph Wilner, an employee of Universal since 1970 and President of the company in 1998, Universal manufactured  "Phone Tab" cards for distribution in the United States at least by March 1998.[9]  Defendants urge that a comparison of these Phone Tabs coupons and promotional material with the cooperative promotional advertising material described by the '179 Patent reveals that all the elements contained in the claims of the '179

_____

[8]Defendants assert that the application was a continuation of a prior patent application filed May 30, 2000, now abandoned.  Thus, by their calculation, the earliest critical date under section 102(b) is May 30, 1999.

[9]Copies of marketing material for the Phone Tab cards are appended to Wilner's affidavit.  See (Doc. 24-3, 24-4).

Patent were present in the Phone Tab cards in use more than two years before the application date for the '179 Patent.[10]  In response, Plaintiffs argue that the lack of novelty and section 102(b) argument fails upon a comparison of the elements of the claims.  Citing PPG Industries, Inc. v. Guardian Industries Corp., 75 F.3d 1558 (11th Cir.1996), it urges that to anticipate a claim, a reference must disclose *every* element of the challenged claim and here Defendants cannot make this showing.  Noting the Defendants' own comparison of the claims in their response, Plaintiffs urge that the Phone Tab cards did not include the elements of the method claim found at claim 6 of the '179 Patent.

Defendants urge that even if all the elements of the claims of the '179 Patent are not found in the Phone Tab cards, the '179 Patent is still invalid because all the claims would have been obvious to one of ordinary skill in the art.  Again, they cite the Phone Tab cards as an example of promotional material which combined all the elements of the '179 Patent including the combining of a product or service promotion with a game of chance.[11] Applying the applicable standard for  obviousness in Graham v. John Deere Co., Defendants maintain that they satisfy each of the prongs.  Thus, the scope and content of the prior art shows all the essential elements of the materials described and claimed in the '179 Patent, there are no differences of significance between the prior art and the claims in the '179 Patent, a person of ordinary skill in the art would have been sophisticated enough to readily combine

---

[10]The '179 Patent is set forth in exhibit 1 to the Declaration of Michael Millsap.  See (Doc. 11).

[11]As described in the pleadings, these cards offered a prepaid phone service and the opportunity of a cash payout.

the known concept of using promotional materials of this sort in combination with a game of chance, and there is no objective evidence of non-obviousness.[12]

As required by section 282, the '179 Patent is presumed valid.  At this stage of the proceedings, based on the evidence before the court, I find it appropriate to conclude that Defendants have not made an adequate claim-by-claim showing of lack of novelty to warrant relief on this motion.  However, upon a comparison of the '179 Patent and the materials associated with Phone Tab cards, I further find that Defendants have raised a formidable challenge to the validity of the '179 Patent for obviousness.  It appears that promotional cards containing break-open coupons offering a product or service combined with the entertainment of a game of chance were in public use well prior to the date of the '179 Patent application.  Although the method of use of such prior art is not clearly demonstrated here, it appears likely that someone with ordinary skill in the art would have been sophisticated enough to combine the concept and methodology patented by the Plaintiffs at and before the time they claimed the invention.

Accordingly, on this motion, I cannot recommend the finding that Plaintiffs are likely to prevail on the merits of the patent infringement claim.[13]

---

[12]Defendants' response cites to certain representations made by F.A.C.E. in an Indiana lawsuit which they contend show that F.A.C.E. itself does not believe its product is unique. Given that the context in which the representations were made is not entirely clear, I have not relied upon these excerpts on the matter of obviousness.

[13]Defendants also urge that Plaintiffs' inclusion of a discount advertising coupon with a game of chance is nothing more than a subterfuge to circumvent the gambling and gaming laws of various states.  Indeed, this matter is currently being litigated in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida.  However, Plaintiffs submit a Stipulation (Abatement of Enforcement Action) entered into between FACE and the State of

C.

Plaintiffs also claim trademark infringement and unfair competition in violation of

section 43(a) of the Lanham Act by reason of the Defendants' manufacture, distribution, and

sale of "Race to Win" and "beetle bailey" cards.  This section provides for civil liability

against

> (1) Any person who, on or in connection with any goods
> or services, or any container for goods, uses in commerce
> any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false
> or misleading description of fact, or false or misleading
> representation of  fact, which--
> (A) is likely to cause confusion, or to cause mistake, or
> to deceive as to the affiliation, connection, or association of
> such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or
> commercial activities by another person, or
> (B) in commercial advertising or promotion,
> misrepresents the nature, characteristics, qualities, or
> geographic origin of his or her or another person's goods,
> services, or commercial activities,
> shall be liable in a civil action by any person who believes
> that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).[14]  Passing off or palming off occurs when a producer misrepresents

his own goods or services as someone else's product.  Dastar Corp. v. Twentieth Century Fox

_____

Florida, Department of Business and Professional Regulation, Division of Alcoholic
Beverages and Tobacco, by which the State of Florida agrees to refrain from enforcement
actions during the pendency of that litigation.  See (Doc. 35, Pls' Ex. 1).  The legality of
Plaintiffs' product has no bearing on this court's ruling.

[14]While Plaintiffs argue that Defendants' actions constitute trademark infringement,
they do not raise a specific claim of trademark infringement under section 32(1) of the Act, 15
U.S.C. § 1114.  Instead, Plaintiffs raise a broader claim of unfair competition that appears to
subsume its claims of trademark and trade dress infringement.

Film Corp.,539 U.S. 23, 28 (2003).  The central inquiry in claims arising under section 43(a) is "whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers."  Monsanto Co. v. Campuzano, 206 F. Supp. 2d 1239, 1247 (S.D. Fla. 2002) (quoting Sun-Fun Prods., Inc. v. Suntan Research & Dev., Inc., 656 F.2d 186, 191 (5th Cir. 1981)).[15]

By Plaintiffs' allegations, they own the highly distinctive AD-TABS trademark under U.S. Registration No. 2,618,600, and Defendants are infringing their mark by selling "beetle bailey" and "Race to Win" coupon cards that are confusingly similar to their "beetle bailey" and "Race to Victory" AD-TABS cards.  Additionally, Plaintiffs allege that these infringing cards are sold in machines bearing the AD-TABS trademark, and Defendants are using or benefitting from AD-TABS promotional items without Plaintiffs' consent.  As such, Plaintiffs argue that Defendants' "knock-off" cards infringe the AD-TABS registered trademark and are causing a likelihood of confusion and actual confusion in the marketplace.  Similarly, Plaintiffs argue that Defendants' activities, particularly the sale of infringing cards in Plaintiffs' AD-TABS machines, constitute palming off or passing off.   In support, Plaintiffs submit the Declaration of Michael Millsap, which attests to the sale of Defendants' cards in Plaintiffs' AD-TABS machines alongside Plaintiffs' AD-TABS cards.  See (Doc. 11-

---

[15]In trademark infringement cases, courts consider seven factors in considering the likelihood of confusion: (1) the type of mark; (2) similarity of the marks; (3) similarity of the products offered by the parties; (4) similarity of sales methods and customers; (5) similarity of advertising methods; (6) the defendants' intent; and (7) actual confusion.  Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir. 1999); Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 122 F.3d 1379, 1382 (11th Cir. 1997).

1 at 24-41; Doc. 11, Exs. 8-9).  Additionally, as evidence of actual confusion, Mr. Millsap

states that FACE received an AD-TABS "no purchase necessary" form from a Mr. Jack Deiss

of Nokomis, Florida, requesting a free AD-TABS coupon card but indicating that he had

purchased one of Defendants' coupon cards.  <u>See</u> (Doc. 11-1 at ¶¶ 42-43; Doc. 11, Exs. 10).

 In response, Defendants do not contest that Universal has manufactured and Famiano

and EWP have distributed the cards at issue to retailers.  However, they contend that neither

card uses the AD-TABS trademark or any other mark or designation that is confusingly

similar.  Defendants note that Universal holds a license to use the Beetle Bailey trademark,

and only by virtue of its license were Plaintiffs able to use the Beetle Bailey trademark on

their cards.   Defendants further argue that a side-by-side comparison reveals that the cards

are not sufficiently similar in appearance to cause confusion, and the size of the cards, though

the same, is a standard industry size.  Finally, Defendants submit the Declaration of Scott

Breeding, which attests that Universal only manufactures the cards and sells them to a

wholesaler such as Famiano.  Famiano and EWP then sell the coupon cards to retail operators

who own and operate the machines, and the retail operators are responsible for promotion and

sale of the products in the machines.  <u>See</u> (Doc. 24-15 at ¶¶ 5-8).  Defendants also observe

that Plaintiffs do not actually provide "AD-TABS coupon card dispensing machines," but

instead the card dispensing machines are produced by third party manufacturers and are sold

directly to the retailers.  At any rate, Defendants disavow any responsibility for infringement

by virtue of the sale of their products in conjunction with AD-TABS cards, machines, and

promotional displays.  Defendants urge instead that any likelihood of confusion that occurs in

this situation is the fault of retail operators.

23

To succeed on the merits of a claim of trademark infringement, a plaintiff must show that the defendant used the mark in commerce without its consent.  Int'l Cosmetics Exch., 303 F.3d at 1248-49.  Here, the Defendants appear correct that they have not actually used the AD-TABS trademark on their products, and as of yet, trademark infringement is not clearly demonstrated.  However, the court finds that Plaintiffs have nonetheless demonstrated a likelihood of success on their unfair competition claims.  Upon a side-by-side comparison of Plaintiffs' "beetle bailey" cards and Defendants' "beetle bailey" cards, they appear confusingly similar.[16]  More significantly, the distribution for sale of Defendants' cards, regardless of facial similarities or dissimilarities, alongside Plaintiffs' products in machines bearing Plaintiffs' AD-TABS trademarks and in conjunction with Plaintiffs' AD-TABS promotional materials, is likely to "cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a)(1).  Because Defendants' activities include "us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading

---

[16]Plaintiffs' "Race to Victory" cards and Defendants' "Race to Win" cards are less similar in appearance, despite the common use of the words, "Race to." However, when the cards are considered as a whole, they bear a confusingly similar resemblance to the AD-TABS cards.  This is especially so when it is considered that Defendants have intentionally manufactured these promotional cards combining advertising with a game of chance and distributed them to the same retail vendors to whom they distributed AD-TABS cards for sale using AD-TABS dispensers.  That the cards' artwork differs somewhat hardly lessens the likelihood of confusion in my mind.

24

representation of fact," <u>see</u> <u>id.</u>, the Lanham Act imposes liability on Defendants, despite their attempt to shift the blame to the retailers.

In light of the undisputed validity of the Plaintiffs' AD-TABS trademark, the similarity of the products offered by the parties, their common manufacture, distribution and sales methods and customers, similarity of advertising methods, likely and actual consumer confusion, and the defendants' alleged intent to recoup sales losses, Plaintiffs have demonstrated a likelihood of success on its claims of unfair competition under the Lanham Act.

### D.

Except to assert that they are no longer manufacturing or distributing these promotional cards, Defendants do not address the last three elements for preliminary injunctive relief under Rule 65, and therefore, only a brief discussion of these elements is necessary.

As to the second element of irreparable harm, the party seeking preliminary injunctive relief must show either that he will suffer or faces a substantial likelihood that he will suffer irreparable injury. <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 n.9 (11th Cir. 2000) (citations omitted). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." <u>Siegel</u> at 1176-77 (quoting <u>Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, Fla.</u>, 896 F.2d 1283, 1285 (11th Cir. 1990)). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." <u>City of Jacksonville</u>, 896 F.2d at 1285. In trademark actions, irreparable harm is presumed where

they have made a prima facie showing of likelihood of confusion.  <u>McDonald's</u>, 147 F.3d at 1310.

A balancing of the harm of an injunction to the Defendants with the threatened injury to the Plaintiffs if an injunction is not granted also favors the Plaintiffs.  Plaintiffs have an undeniable interest in protecting their mark from further harm.  Defendants cannot deny that they acted willfully in this instance, and although they claim they have voluntarily ceased to distribute the offending cards and sought the return of any remaining infringing cards, the potential for ongoing and recurrent violations exists.  In these circumstances and given the potential harm to the Plaintiffs' mark, the imposition of an injunction to maintain the *status quo* does not seriously harm the Defendants.  This factor also favors the Plaintiffs.

Finally, the last factor also weighs in Plaintiffs' favor, as the public interest is served by prohibiting unfair competition, preventing confusion in the marketplace, and protecting the rights of registered trademark holders.

In summary, Plaintiffs have made an adequate showing under Rule 65 for the entry of a preliminary injunction to enjoin Defendants from competing unfairly with Plaintiffs.


V.

For the foregoing reasons, it is recommended that the court GRANT IN PART Plaintiffs' Motion for a Preliminary Injunction (Doc. 9) and enter a preliminary injunction limited in scope so as to protect Plaintiffs' legitimate business interests as follows:

    (1)    enjoining Defendants Frank Famiano, East-West Partners, Inc., Universal Manufacturing Co., and all persons acting in concert with them, including but not limited to any officer, employee, agent, or

other representative from directly or indirectly manufacturing, distributing, selling or offering for sale or otherwise dispensing any beetle bailey, Race to Win, or such similar break-open coupons or cards combining promotional material or advertising with a game of chance at any location at which Plaintiff's AD-TABS cards or coupons are being sold or dispensed;

(2)      requiring the Defendants to remove any and all of its infringing products from the marketplace, including those in they placed in the possession of third-party distributors;

(3)      require, as a condition of this injunction, that Plaintiffs post a cash or surety bond in the amount of $10,000.00 in a form acceptable to and approved by the Clerk of Court for the United States District Court, Middle District of Florida.

Respectfully submitted on this
10th day of January 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record